SOUTHERN NATIONAL BANK v. A. D. O'BRIEN, THOMAS W. DAVIS, AND P. A. WILCOX.

(Filed 10 April, 1918.)

1. **Attorney and Client—Fees—Prior Assignment—Notice—Action—Prima Facie Case.**

   Where an attorney has collected by suit monies for his client upon the latter's building contract, and has retained a part thereof as compensation for his services, in an action by a prior assignee of the contract, the plaintiff makes out a prima facie case against the attorney by showing the assignment of the contract to himself, the amount of the indebtedness and that the attorney acted with notice of his claim.

2. **Same—Burden of Proof—Quantum Meruit.**

   Where an attorney has collected in part upon his client's contract and has retained a part thereof as his fee, the burden is on him to show, in

an action by the assignee of the contract, upon his making a prima facie case, in the absence of a special contract between them, that he is entitled to his compensation upon a *quantum meruit*, and that he has properly distributed the funds in his hands.

3. **Same—Pleadings—Amendments—Courts.**

   · Where the plaintiff sues his debtor's attorney for the entire sum collected by the attorney upon a contract assigned to him for security of a loan, the position taken by the trial judge that he could not recover without an amendment setting up a *quantum meruit* is incompatible with the principal cause of action, and a nonsuit upon his failure to so amend, when he has made out a prima facie case, is reversible error.

CLARK, C. J., concurring.

WALKER, J., did not sit on the hearing of this case.

APPEAL by plaintiff from *Lyon, J.*, at February Term, 1918, of NEW HANOVER, on judgment of nonsuit.

*John D. Bellamy & Son for plaintiff.*
*E. K. Bryan, McClammy & Burgwyn, and George Rountree for defendants.*

BROWN, J. In 1909, Defendant O'Brien entered into a contract with the County of Kershaw, South Carolina, to build the concrete abutments to a bridge over the Wateree River. This contract, "with all of the equity, payments, and other considerations received and to be received from the County of Kershaw," was duly assigned to plaintiff as collateral security to O'Brien's notes to plaintiff, given for money advanced with which to prosecute the work.

It becoming necessary to sue the County of Kershaw on the contract, suit was instituted in name of O'Brien in the Federal Court of South Carolina and prosecuted for several years by defendants Davis & Wilcox as attorneys. They finally recovered $3,106.10, of which they paid $606.10 to O'Brien and retained $2,500 for their professional services.

The plaintiff bank now sues to recover the whole of the $3,106.10 from defendants Davis & Wilcox, claiming that they should have paid it over to plaintiff as assignee of the contract with Kershaw County. The defendants deny the right to recover and aver that they are entitled to retain the $2,500 as the value of their professional services in conducting the protracted litigation.

At the conclusion of plaintiff's evidence the court sustained motion to nonsuit upon the ground that in no view of the evidence could plaintiff recover the entire sum and offered to allow plaintiff to amend its complaint and set up a *quantum meruit*. The plaintiff declined to amend and appealed from the judgment of nonsuit.

We are of opinion that the court erred. The plaintiff could not be required to make an amendment to its complaint that is incompatible

with its principal cause of action. If the evidence was sufficient in any view of it to make out a prima facie case, plaintiff had a right to have it submitted to the jury in a proper issue and under proper instructions.

When plaintiff put in evidence the contract with Kershaw County and its assignment to it and proved O'Brien's indebtedness for which the contract was security, and proved by the answer or otherwise notice of the assignment and the collection of the money by said defendants, plaintiff made out a prima facie case.

It was then incumbent on defendants to account for the money received under the contract and to justify its disposition. As there is no evidence of a special contract for their legal services, the burden was on the defendants to set up the *quantum meruit* and show what their legal services were worth and that they had the legal right to retain their compensation out of the sum collected by them.

The testimony of the president of the plaintiff, the only witness examined, is to the effect that "he did not agree to pay Mr. Davis any fee in the prosecution of the suit."

The evidence of the witness is somewhat ambiguous. It may be that the jury would draw the inference that the bank was to bear no part of the expenses of litigation, and that nothing was to be deducted on that account from the proceeds of litigation. Or it may be the jury would conclude from the transactions and negotiations between witness and Davis that the attorneys were not to look to the plaintiff for any compensation, but were to retain it out of the fruits of litigation only.

We know that it is a common custom for attorneys to accept claims for collection and to retain their compensation out of the proceeds of collection. It is possible the jury may infer that defendants did not intend to release their right to compensation but only to forego the liability of the plaintiff for it. We think that an issue should be submitted as to how much, if any, is plaintiff entitled to recover.

Under such issue every phase of the case can be presented to the jury by plaintiff as well as by defendant.

New trial.

CLARK, C. J., concurring: O'Brien borrowed from the plaintiff bank $8,500 to be used in building bridges for Kershaw County, S. C., and to secure the same assigned his contract with said county. O'Brien brought suit against the County of Kershaw to collect $20,000, the sum he alleged to be due on said contract, and employed his codefendants Thomas W. Davis and P. A. Wilcox in the litigation. To this action the bank was not a party.

In said litigation judgment was recovered in O'Brien's name for $3,090.59. This sum was paid over to O'Brien's lawyers. The bank,

thereupon, demanded payment to it under its lien of which counsel had notice when they began the suit, alleging that the bank did not retain Davis and Wilcox and would not have done so because it had its own counsel and had refused to retain O'Brien's lawyers at the time.

The defendants, in their answer, admitted the collection of the $3,-090.59, stated that they had retained $2,500 as their fee; that O'Brien had paid them $950 additional, and that they had not paid anything to the plaintiff, "but politely and positively refused to do so," and they did not tender anything. They further averred that the plaintiff contracted with them to prosecute the action. The complaint averred that plaintiff had no connection with the suit, had refused to be liable for fees and expenses, and took no part except to give information when asked by the defendant.

At the trial the judge required the plaintiff to amend his complaint and to rest his action upon a *quantum meruit* for services rendered. The plaintiff put on evidence that it had not contracted with Davis and Wilcox nor assented to their employment. The defendants offered no evidence. The plaintiff's plea raised the issue that it was not liable to the defendants in any sum and it refused to amend. Thereupon the judge directed a nonsuit.

The questions raised are of grave and general importance. At common law counsel not only had no lien on the fund, but in England to this day they cannot recover for their services. In this State counsel can recover their fees, but they have no lien on the funds recovered. In the Federal Court there is no such lien "unless given by State statute." 6 Corpus Juris., 766, and note 73. It is not likely that any Legislature will give counsel a lien upon the recovery, for this would give them priority to the client and would make counsel a necessary party to every action, and would reverse the age-long principle that has made champerty illegal. Therefore the counsel had no lien on the fund even against O'Brien, but merely a simple contract debt, and they could not possibly have any lien against the prior lien of the bank, which was not even a party to that action. Their right to set up a counter claim against the bank depends upon whether there was any contract, express or implied, on the part of the bank. This is alleged by defendants Davis and Wilcox (who put in no proof of it) and is denied by the bank, who sustained it by testimony. The burden of this issue is on defendants to prove that the plaintiff was indebted to them for their fees by way of counter claim. Even if counsel had a lien on the fund against O'Brien (which they did not), such lien was subject to the prior lien O'Brien had given the bank. He could not cancel the bank's lien nor could his lawyers do so merely because he owed them for their services.

The judge could not nonsuit the plaintiff on the ground that the defendants had proven their counterclaim, for the burden was on them, and, besides, they had put on no evidence in rebuttal of the plaintiff's testimony to the contrary, and this was a matter for the jury. The testimony of the plaintiff was that it had not waived its lien in any way.

Nor could the judge nonsuit the plaintiff for refusing to amend by abandoning its plea that it owed the defendants nothing. Indeed, it is not easy to see how the recovery. by counsel of a fund (not one cent of which the plaintiff has received) could entitle them to a claim that they had benefited the plaintiff to that extent, though not a party to the action. The plaintiff received no benefit at all, much less can it be benefited to the extent of $3,090.59, for which it has got nothing at all.

The issue should be "Is the plaintiff indebted by way of counter claim to the defendants, and if so, how much?" In any aspect, it was error to nonsuit the plaintiff, for the burden of the issue was upon the defendants.